RECEIVED IN CLERK'S OFFICE

DATE 11-14-11

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:

———————————————————————

**HEIDI K. ERICKSON.,**
    *PLAINTIFF*

v.

**COMMONWEALTH OF MASS., AOTC, CPCS,**
**DEPART. OF PUBLIC SAFETY, MCI FRAMINGHAM**
**TAUNTON STATE HOSPITAL, TOWN OF PLYMOUTH**
**TOWN OF BOURNE, ANTHONY BENEDETTI, WILLIAM**
**LEAHY, ROBERT MULLIGAN, RONALD CORBETT**
**ROBERTA GUEZ, LYNN BISSONNETTE, PHILIP MCCUE**
**MARK STANKIEWICZ, DANIEL SULLIVAN, NANCY**
**BENNETT, CAROL BECK, NANCY O'LEARY, ARMAND**
**POTENZA, DONALD BRONSTEIN, TIMOTHY NORRIS,**
**JOSEPH MCDONALD, JR., BOTIERI, MICHAEL**
**CHARLES WARNOCK, MELISSA MELIA, WILLIAM**
**MCCUSKER, JAMES KEEGAN, JOHN ROGERS,**
**MICHAEL BURKE, DENNIS WOODSIDE, WILLIAM**
**FALL, JESSICA CRISTANI, LINDA BRACKET, and**
**JOHN DOE, JANE DOE**
    *DEFENDANTS*

———————————————————————

*VERIFIED*
*COMPLAINT FOR*
*DAMAGES,*
*DECLARATORY, AND*
*INJUNCTIVE RELIEF*

*& JURY DEMAND*

## <u>COMPLAINT</u>

**PARTIES**

1.    Plaintiff Heidi K. Erickson is a natural person, whose domicile is Kentucky, admitted

into a degree granting program (Equine Sciences and Management) at the University of

Kentucky since 2010 and determined disabled by the United States Social Security

Administration since 1/2003, although "Erickson" has multiple disabilities she is also

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 2

indigent[1] and fully qualified[2] under the applicable Federal and state laws for indigency

and disability i.e. Americans with Disabilities Act Titles II[3] and G.L c.151b et.seq.

**DEFENDANTS**

Defendants are all government employees of either the agencies of the Commonwealth,

or its political subdivisions, or are private citizens employed by the public defendants.

**JURISDICTION AND VENUE**

1.      Jurisdiction is conferred upon the Federal District Court, although it is improper that the

District of Massachusetts hear this matter4.

---

1   Erickson is a person who receives public assistance under Title XVI of the Social Security Act or the
    Medicaid program, 42 U.S.C.A. 1396, et seq.; and whose income, after taxes, is 125 per cent or less of the
    current poverty threshold established annually by the Community Services Administration pursuant to
    section 625 of the Economic Opportunity Act, as amended; and she is unable to pay the fees and costs
    without depriving herself of the necessities of life.

2   M.G.L.c151b section 1 paragraphs (16) & (17): (16). The term "qualified handicapped person" means
    a handicapped person who is capable of performing the essential functions of a particular job, or who
    would be capable of performing the essential functions of a particular job with reasonable accommodation
    to his handicap. (17). The term "handicap" means (a) a physical or mental impairment which substantially
    limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being
    regarded as having such impairment, but such term shall not include current, illegal use of a controlled
    substance as defined in section one of chapter ninety-four C.

3   Title I of the ADA, 42 U.S.C. §§ 12111-12117, addresses discrimination by employers
    affecting interstate commerce; Title II, id. §§ 12131-12165, addresses discrimination by
    governmental entities in the operation of public services, programs, and activities, including
    court house administration; and Title III, id. §§ 12181-12189, addresses discrimination in
    public accommodations and services operated by private entities; and the Rehabilitation Act of
    1973, 29 U.S.C. § 701, et seq..

    Title II of the ADA provides, inter alia, that "no qualified individual with a disability shall,
    by reason of such disability, be excluded from participation in or be denied the benefits of the
    services, programs, or activities of a public entity, or be subjected to discrimination by any
    such entity." Id. § 12132.   The statute defines "qualified individual with a disability" as

4 See filed herewith Motion For Change of Venue.

Erickson v. Benedetti, et al
Civil No. 11-          (___)
Page 6

of the laws.

12.    CPCS and its employees continually threaten any assigned attorney by refusing to
adequately provide reimbursement of his or her legal representation infringing on the
Plaintiff rights to due process and fairness. Plaintiff has complained to the SJC, and for
over 2 years complained to Willy Davis, Esq. Chairman of the Board to CPCS and in
retaliation Plaintiff has suffered these wrongs complained of herein.  She has no appellate
attorney, her notice of appeal from a wrongful conviction was timely filed in January
2011, the transcripts have been ordered and prepared and could have been read by March
2011 and the appeal filed in the summer today there is no assembly and no advocacy and
the assigned appellate attorney (Heartquist has misrepresented himself numerous times
to the Plaintiff, she has been denied reasonable recourse and told to represent herself on
appeal! The Defendants refuses to adequately communicate with her and refuses and/or
fails to advance her criminal appeal since August 2011 creating a hostile, unequal,
discriminatory, retaliatory and deprivatory treatment and environment.

13.    Plaintiff was scheduled to have knee replacement surgery for her severe osteoarthritis in
December 2010, but since her wrongful conviction in December to March 10th, 2011
where her captors failed and refused to provide her necessary and adequate medical
treatment she now uses a wheelchair and nearly died last month due to the long gap in
adequate treated for anemia, PTSD, anxiety, sleep disorders, high blood pressure.

14.    While captive she filed human rights complaints w/ multiple agencies who did nothing.

6

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 7

### PRELIMINARY STATEMENT

1.  (1) Plaintiff has pleaded a <u>prima facie</u> case under title II and III of the ADA. Congress has specifically abrogated the States' eleventh amendment immunity for suits brought pursuant to the ADA Title II, see *U.S. v Georgia*, 546 U.S. 151.

2.  Under title II of the ADA the defendants can be sued in their official capacities; and

3.  Judges do not enjoy absolute immunity for acts that are administrative rather than judicial in nature, see *Stump v. Sparkman*, 435 U.S. 349, 356 (1978), *Forrester v. White*, 484 U.S. 219, 224-225 (1988), and *Cameron v. Seitz*, 38 F.3d 264, 271 (6th Cir. 1994).

4.  The Commonwealth of Massachusetts is a body politic.

5.  The Committee for Public Counsel Services (hereinafter "CPCS") is the Massachusetts state agency empowered to supervise, maintain, and oversee a system for the constitutionally-mandated appointment of counsel for indigent persons. Some of the Defendants are or were employed by the CPCS. The Plaintiff, Heidi K. Erickson, is a indigent recipient of services provided by CPCS at all times material to this Complaint. Plaintiff "Erickson" is also disabled according to the ADA, and M.G.L.c151b, United States Social Security Administration and receives both SSDI and SSI. Plaintiff's disabilities interfere with her communications with her defense attorney requiring of same to expend additional time to accommodate her disability in their efforts to communicate, maintain effective and meaningful assistance and sensitivity.

6.  The Administrative Offices of the Trial Court (hereinafter "AOTC") is the Massachusetts

7

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 8

agency empowered to supervise, maintain and oversee the court system for the Commonwealth, maintain clerks, judges, scheduling and much more related to the day to day operation, and access for the public including supervision by the public and access for the litigants.

7.   As the Defendants CPCS, AOTC, and their associated defendants (Leahy, Benedetti, Mulligan, Sullivan, Bennett, Beck, Bronstein, O'Leary, McCue, Gardener) have often acknowledged publicly, and in numerous emails with Defendants and in other emails to others including defense attorneys assigned to provide services to Erickson, denied billing/reimbursement for extra services or time directly related to accommodations that these attorneys have found to be both reasonable and necessary for effective and meaningful communications or for necessary criminal defense strategy with the disabled Plaintiff but because of the Defendants forbidding them to apply their defense expertise will not pay same for their time, interfered with and deprived Erickson of rights, due process and other protections of the United States and Massachusetts Constitutions.

8.   Defendant's actions were knowing, and conspired, and malicious.  Defendant have an obligation to Plaintiff but have deprived Erickson of important rights the agency was intended to protect, conspired to cause her conviction and deprivation of property rights, discriminated against her because of her disability, retaliated against her because she has reported these actions to agencies and refuses to pay for necessary post conviction relief that the Chairman of the CPCS Willy Davis, Esq. advised Bennett ad Erickson repeated

8

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 9

were necessary for the proper securing of her rights. These defendants have known and
retaliated since on or before 2009 See email from Leahy and O'Leary (Exh 3).

9.   February 19th 2009, the AOTC and Sullivan issued a letter (Exh 4), noting its other
discriminatory act of August 7th, 2008 and with this 2/19/09 act discriminated against
Erickson because of her disability and requests for the modification of its policy against
dogs in its Courthouses, requested that it modify its policy to enable her use of a service
dog in its buildings, AOTC and its employees continued to discriminate and then
retaliated against her.  Erickson filed suit against it in 2008 a case in the US District
Court, dismissed inappropriately by Judge Zobel who should have recused herself as she
was on Harvard University Board of Overseers (because of Erickson previous litigation
with Harvard University) like Judge Sarris (a recent graduate of HU) hearing a case
Plaintiff brought against Harvard, Sarris dismissed the action demonstrating gross
negligence to her duties as an officer of the Court, but she was bias and now she is on the
same board as Judge Zobel – these judicial actions are obviously wrong.

10.  Erickson continues to be mistreated by the US District Court for the District of
Massachusetts as it had in her 2010 lawsuit that was sua sponte dismissed for possible
absention issues – its not known as it was not discussed in by the Judge but regardless
there was and continues to be progressive deprivations of due process by the Defendants
who appear to have been given the green light by the Federal District Court in
Massachusetts.  The lawyer assigned to protect and provide a fair trial for Erickson after

9

Erickson v. Benedetti, et al
Civil No. 11-       (___)
Page 11

> GLc211.3 Petition, and Judge Spina denied her any relief granted the Respondent an
> unorthodox and unfair to Plaintiff 3 months to reply then dismissed the action.

**12.** There is no administrative remedies to bar Plaintiff immediate relief and injunction the state has failed to provide a fair trial, and after trial incarcerated in two institutions which tortured Plaintiff failed to provide her adequate pain relief, medical attention, and sanitary facility and/or confined her in isolation to torture her.

ISSUES

**13.** Issues improper post conviction detention to deprive her of and infringe on important Constitutional protections in the 1st, 4th, 5th, 6th, 8th, 14th amendments and property without due process, restrict her access to medical treatment, federal benefits, and proper or adequate legal assistance in the face of incarceration (see new probation conditions issued 9/13/11 (Ex.4) these are actionable under 42 USC 1983.

**PLAINTIFF'S PRELIMINARY STATEMENT**

On November 10th, 2011 Plaintiff requested to be heard on her Motion For Permission to Travel in the Plymouth District Court and was denied. No reasonable or adequate reasons were articulated and that the sentencing Judge on 1/11/11 who had known of her domicile as Kentucky, that she a full time degree admitted student and that she would be returning to her domicile and studies, did not require her to remain in Massachusetts. Plaintiff was wrongly incarcerated for a crime she did not commit, denied a fair trial and tortured while incarcerated and upon her release the probation department has harassed

11

Erickson v. Benedetti, et al
Civil No. 11-        (    )
Page 12

her, negligently administered her case and deprived her of her constitutional rights, equal

treatment, fabricated claims and discriminated against her due to her disability.

2.      Before and after December 31st, 2008 Plaintiff was living in Plymouth MA at 5 Lothrop

Street and had been relentlessly harassed by the Plymouth Police Department for over a 4

year period involving numerous of their employees who would involve the Town's Fire

Department to force unwarranted searches of Plaintiff's home (8/8 & 8/12/2008, 3/17 &

3/18/2009) (Exhibit 1 Plymouth Fire Department Log), and misconduct claiming Plaintiff

had cried help to provide it with a reason to enter when in reality Plaintiff was either

advised by her counsel or watching TV with earplugs in and failed to answer their knocks

at the door, or unauthorized entries because of an ruse 'water leak', 'odor', or that

Plaintiff was having a medical episode the fire department could not agree with, or it and

was repeatedly requested their services to force an entry through a locked door or open

second floor window.  On June 4th, 2007 the Plymouth Police asked the owners of a

Chinese Restaurant, who happened to be Plaintiff's new landlord during her first month

of residence above this restaurant, to evict Plaintiff!  That restaurant owner/landlord

complied to the Police wishes asking the Plaintiff first why a Police Officer would ask

her to do such a thing and when she did it try to evict Plaintiff it cost her and her lawyer

over 2 years of litigation each month in court and the Police Department resented

Plaintiff and conspired with another of Plaintiff's landlord (Rose Geller) to faux a

claimed criminal allegation on Plaintiff.  Geller was use to that as she has a habit of

12

Erickson v. Benedetti, et al
Civil No. 11-        (    )
Page 15

informing same that she was awaiting to be heard in court that day and identified the case

by number. That office refused to assist and harassed Plaintiff by asking her to leave their

offices accompanied with her tagged, and documented Service Dog. And after doing so

called and advised the Plymouth Police Department of the actions that took place that day

in court when Judge Young without reasonable judicial insight dismissed her case against

the Balbonis'. Although when Plaintiff was in Judge Young's Court room she was not

harassed with her service dog, and the Court on March 17th, 2009 wrongfully and

negligently failed to progress Plaintiff's complaint dismissing it.  Plaintiff claims that

dismiss arose only because she was disabled and not due to any imperfections in the

complaint or lack of jurisdiction but due to prejudice, bias and failures of that court.

When Plaintiff arrived home nearly 2 hours or more later, the Plymouth Police, being

emboldened by the wrongful actions of the Court, and encouragement from the US

Attorney's Office had without warrant entered her home, and triggered her alarm system

(ADT, when the ADT staff called the Plymouth Police Department dispatcher to report

an unauthorized entry triggered the alarm the Plymouth Police Officer instructed the

ADT to not called Plaintiff and that they were there inside her home).  These actions

were outrageous and well beyond the expectations of reasonable police officers in a

civilized society! The defendants Town of Plymouth, Stankiewicz, Botterie, Warnock,

Keegan, McCuster, Rogers and others tried to cover their conspiracy and wrongful

actions, unreasonable search and seizure by claiming that Plaintiff had been allegedly

15

Erickson v. Benedetti, et al
Civil No. 11-        (__)
Page 16

cruel to her animals inside, failing to feed (despite three automatic feeders with approximately 10 pounds of cat food in each, and at least five 20 lb bags of cat food left in the open on the kitchen floor, and at least one in each of her multiple rooms filed filed clear water in the automatic gravity dispensing watering dispensers all in full view of the numerous officers armed with their cameras) taking photos, claiming that the Plaintiff failed to provide a sanitary environment) and in the presence of then Director of the Board of Health who was on scene with the Officers did not agree with the Officers claims (Exhibit 2 Deposition Merrifield) did not cite Plaintiff with a complaint and found no violations of the state sanitary code a much more stringent requirement for sanitation under the State Sanitary Code, then that required for animals. The warrant application and affidavit of Warnock attested to the "litter boxes were overflowing" (Exhibit 3 are the only 2 photos of litter boxes taken by Warnock that day) the photos do not even depict one turd or clump and the Judge (Welsh who later Recused himself) denied Plaintiff's Frank's hearing and the exclusion of that claimed "litter boxes were overflowing" misrepresentation that should have been stricken as a result of a Franks hearing, but pointed out that their was a smug on the side of the litter   box and therefore the motion was denied".

5.      Plaintiff has NEVER been allowed to present her case, fairly, fully or equally under the laws and has not been provided a fair hearing, an assigned public attorney is repeatedly told or threaten no reimbursement of its time spent of reasonable application of defense

16

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 17

tactics and case presentation. The Director of the Board of Health or the Defense Expert veterinarian were not interviewed because the CPCS would not provide reimbursement to the public appointed defense attorneys for their time required to ensure a fair trial and defense preparation. Numerous criminal allegations were whole allegations were fabricated in retaliation due to Plaintiff's Complaint regarding her disability. The Plymouth Police Department defendants seized her animals and then returned her service dog but it demonstrated great fear of persons in dark blue and its sensitive sophisticated training was ruined its ability to detect Plaintiffs seizure and aid with her PTSD damaged behavior to aid Plaintiff with her disability was completely damaged as a result. The dog showed signs of extreme abuse by anyone dressed in dark blue. The Plymouth Police by taking her other 11 animals (purebred Persian cats (3 documented as service animals) facilitated the deaths of nearly half of same (5) by placing against court orders issued on April 3rd, 2009 with Defendants Fall, Bracket and others (Doe) whom court records (not all disclosed to defense attorneys) that Fall negligently left one cat who was grossly pregnant alone all weekend while she suffered preeclampsia and died due to hemorrhages. Fall was completely, maliciously negligent and committed malpractice. Bracket or Doe caused blunt force trauma to cat # 9's liver where the autopsy found a hemorrhaged liver creating sudden death in the cat from this forceful blow Doe is believed to have failed to provide adequate care and was negligent. No one has yet to be charged with any crime of these actions including when Plaintiff found her beloved

17

Erickson v. Benedetti, et al
Civil No. 11-          (___)
Page 18

Persian Service cat (Cat #5) named Beautiful with an upper respiratory infection on March 19th 2010. The week that a new defense attorney was assigned by CPCS, Bennett and Beck assigned Don Brisson who in turn arranged for the Plymouth Police to present Plaintiff's cats so that she may review them and their condition. Plaintiff tried to convince Brisson that Beautiful needed to be seen by Dr. Poling according to court orders issued the year before but her refused requiring Plaintiff to call the Chief Botterie defendant who laughed and did not attempt to make sure the another Doe who was allegedly caring for Beautiful brought him to Dr. Poling. Brisson was abusive, insulting and appeared mentally disturbed and when Beautiful allegedly died a week later Brisson made abusive and insensitive remarks to Plaintiff. Another cat is missing never accounted for after it was numbered and photographed on the first and second day of its unlawful unwarranted seizure, this gentle creature was deaf and required specialized treatment. Another cat died from another incompetent vet when it failed to provide appropriate care during an unauthorized dental treatment brought in by Bracket. Plaintiff never authorized her cat to have any dental procedures, and by court order any veterinary procedures must have gone through Plaintiff's expert Dr. Poling and this cat was not as the others Dr. Poling was only called once on two cats and the named/said deceased cats were not those hereinaforementioned. By court orders the Plymouth Police were ordered not to release the Plaintiffs cats to a third party non-government entity like Bracket and her private funded allegedly cat rescue group whom the Plymouth Police gave Plaintiff's

18

Erickson v. Benedetti, et al
Civil No. 11-          (___)
Page 19

cats to against these court orders a few days after the issuance of these orders. Bracket is

brought into this case in order to determine her liability as a government official or as a

private citizen who is responsible for the negligent and outrageously malicious lack of

appropriate care that Plaintiff's valuable pure breed Persian cats were subject to and

Bracket was hired in the spring of 2009 by the Town of Plymouth and defendant

Stankiewicz in order to deprive the Plaintiff of her property and to produce false and

malicious public scorn against the Plaintiff in an attempt to concoct a media campaign to

hide   their   wrongful   actions   with   malicious   defamation,   and   outrageous

misrepresentations about her cats to the TV and internet markets.

6.      All of the Defendant's actions were torturous, malicious, negligent and retaliatory under

the color of law. In retaliation the Plymouth Police Department and the named defendants

herein conspired to retaliate against Erickson to harass her, fabricate a criminal charge

against her, aid and abet an eviction, seize her property and deprive her of necessary

disability accommodations (service animals), produce public scorn and make her look

criminal in the eyes of the public.

7.      Anything that is part of the criminal charges, appeal of the conviction is not being

progressed because of the interferences and infringement of Plaintiffs rights there is no

adequate attorney and Plaintiff has requested an assignment of counsel not under the

control of the CPCS or that  relief from this Honorable Court include an Order for the

non-interferences of this agency and others.

19

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 20

8.      ("CPCS") Bennett asked Attorney Markey to take her case and represent her. Defendants

Town of Plymouth and its Manager hired Defendant William Fall and to care for

Plaintiff's seized animals under their negligent and incompetent care several of these

valuable purebred Persians died, records were never produced on some and while all 11

of Plaintiff's valuable animals were taken out of her home, Plymouth Police defendants

never itemized her carries and converted same to their own never returning same despite

multiple requests.

9.      CPCS, Leahy, Bennidetti, Bennett, Beck, O'Leary, and Bronstien have conspired to

prevent, interfere and deprive Plaintiff of a right to appeal and their actions include

instructing defense attorneys not to work on defense tasks, tactics, payments to Dr.

Poling or preparation of defense strategy pretrial or post conviction, interfering with their

advise and strategy, and causing the conviction of Plaintiff and no progress of her right to

appeal this false conviction and by it actions have caused her to remain detained

unlawfully, unreasonably and tortured by this negligence, and retaliation.

10.     Plaintiff claims that this case should be transferred to the US District Court of Eastern

Kentucky as it is improper venue here in Massachusetts.

11.     Plaintiff is not fully aware of all the damages today but reserves the right to amend.

12.     The last defense attorney Gens failed to do several very important defense preparations

for trial including securing a proper bill of particulars because both the prosecution

refused to provide same and CPCS advised him that it would not cover the expenses of

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 21

his time. CPCS, Leahy, Benedetti, Beck and Potenza refused to pay the defense expert Dr. Rodney Poling despite 6 motions allowed by judges in the District Court, a second expert witness was necessary to address the new claims the prosecution revealed in its incomplete and confusing inadequate bill of particulars provided in the summer of 2010 but these maybe adequate to hear in an appeal in state court because the defendants are refusing to provide a appellate attorney they are depriving Plaintiff due process.

13.     Because of these limitations and negligence of duty the 4th defense attorney failed to ever talk to the defense expert until he arrived unprepared to trial nearly 2 years after he initially examined all of the cats, the Plaintiff's home and reviewed the Commonwealths medical records on these cats Dr. Poling numerous laboratory tests and photographs that were exculpatory were ordered removed from the jurys review because of a failure of reciprocal discovery.  This defense attorney was repeatedly advised that he will not be reimbursed by the CPCS defendants if he submitted requests that went over time limitations set that by the CPCS defendants that interfered with proper defense strategy, deprived Plaintiff protections of the 4th, 5th, 6th, 8th, and 14th amendments and were meant to harm Plaintiff and cause her conviction on December 16th, 2010.  His advice was that Plaintiff initially request time for a sentencing evaluation, but unbenounced her bail was revoked and she was held for a sentencing evaluation in a facility that tortured her and fabricated issues to compensate for Plaintiff reporting same to Human Rights and Protection agencies.

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 22

14.    On December 16th, 2010 Plaintiff was transported to that facility the Sheriff's
Department placed her in a unsafe van, the drivers slamming on the brakes causing her to
be thrown on the floor causing her to suffer damages to her neck, spine, and shoulder.
Shortly thereafter her arrival at that facility (Taunton State Hospital) was to conduct a
presentencing evaluation, numerous staff abused her: fabricating incidents that she was
using her wheelchair as a weapon when the staff would push her wheelchair with such
force it would fly down the hallway on it own speed that Plaintiff was unable to stop it
and that it pulled her so hard when she was in the wheelchair she fell out and hurt herself
to encouraging patients to assault the Plaintiff.  TSH staff created a ruse to take her
wheelchair, encouraging others to assault her, failing to provide protection, depriving her
of writing instruments and disparities in medical treatment.  A lawyer each from the
Disability Center and Prisoners Services reported the abuse, multiple assaults and battery
to Defendant Guez, CEO who immediately had Plaintiff transported to MCI
Framingham, that facility denied her adequate access to a toilet for her first 72 hours and
it refused to provide her with even a bedpan and stated they had none, failed to provide
adequate pain medication and kept her in total isolation for approximately 40 days
depriving her of exercise, it denied her access to a telephone to call her lawyer for 3
weeks, made her to sit in bloody clothes, and sheets for days and failed to provide her
adequate pain and medical treatment. The MCI Framingham defendants also denied her
safe and adequate housing, access to recreation, religious services, a law library and

22

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 23

security from dangerous inmates.

15.     Plaintiff reported these conditions to MCAD who did nothing, Plaintiff believes that if it was not legally obligated as she alleges it should have been morally and ethically obligated to report same.

16.     Finally on January 24th, 2011 Plaintiff for the first time in 3 weeks was able to reach her appellate attorney Caddick.  Erickson requested Caddick to file several necessary post conviction remedies due to the very strange, excessively punishing nature of the Orders of her sentencing and probation – 5 years without animal contact for a crime she did not do and the severity of this punishment in light of the unfair trial and what facts were presented mild neglect based on dental tarter found was the only finding that both experts agreed upon found in the cats a fact the sentencing judge knew.  But she also knew that the trial was unfair by the order to deprive the exculpatory evidence from the jury.

17.     The Commonwealth and its associated agencies have now meant to interfere with her academic challenges seeking her degree by preventing all contact with animals even those not under her care used in her academics and interference with her rights and protections of valuable property.

18.     Plaintiff is 51 years old and her mental capacity in five years or even two years will not be the same as it was last year.  It is advantageous of the Commonwealth to rely on Tuffs Veterinary School which was found to follow instructions issued by the Plymouth Police department to not take lab tests on the cats and to make these types of findings this expert

23

Erickson v. Benedetti, et al
Civil No. 11-    (___)
Page 24

was coached and not unbiased as it has been trying to use Plaintiff as a model to its
frivolous claims that there is a disease called cat hoarding and it applies to Plaintiff. So it
uses this claimed notoriety to make a name for itself in the small world of veterinary
schools by trying to specialize in a meritless field of expertise promoted by animal rights
activities that tend to use this non-recognized by the psychiatry world nor published in
the DSM IV, and used ultimately to seize animals warrantlessly and/or deprive property
from the suspected claimed 'cat hoarders'.

19.    Plaintiff's sentencing conditions of 1/11/11 were erroneous, not directly related to any
findings at trial and were intentionally torturous and after the attorney Gens on May 2nd
2011 reminded the Court (Judge Cannone a former employee of the CPCS for the last 10
years) Cannone appeared not to act on any further filed motions intented to address
sentencing which were required to be reviewed as conditions and circumstances have
changed and are for 5 years without the use of her service animals a coping strategy
Plaintiff has had all her life- this no animal contact is totally without cause from the
findings at trial and would impermissibly interfere, and prevent her from completing her
degree. Caddick failed to properly support a motion to revise and revoke despite having
the ability to contact the University, or the Dr.s who advised her of the necessity of the
animal contact and research it diligently. Caddick also mentioned that CPCS, Bennett
and/or Bronstein would not approve of her work,

20.    Plaintiff was released on March 10th, 2011 and immediately requested to be heard on this

24

Erickson v. Benedetti, et al
Civil No. 11-        (     )
Page 25

and requested additional post conviction motions related to her domicile in KY and health care provisions.  Both her trial and appellate attorney advised her that the defendants Nancy Bennett, Don Bronstein and CPCS refused to authorize any further post conviction work regardless if it was for the protections of error ridden probation, harmful and unlawful probation conditions So Plaintiff repeatedly visited and spoke with Willy Davis, Esq. the Chairman of the CPCS Board who advised both Plaintiff and consoled her that he would and did speak to Bennett and recommended to her that additional funding was necessary to support defense counsel to work with the ADA to eliminate any supervised probation condition and correct the conditions that interfered with her academics and health care in KY or with her service animals.

21.     On 5/2/11 Plaintiff advised Judge Cannone of Willy Davis attempts to work on Plaintiffs behalf for the necessity of assigned counsel to aid Plaintiff with these post conviction relief so Cannone then ordered Davis to produce an Affidavit of same, he refused but stated that Cannone could call him about his suggestions and recommendations. Also on 5/2/11 Cannone made it clear that she had no intentions for Erickson to remain in MA and asked why she was not in KY.  On this same date PO Melia asked Judge Cannone about her concerns that Erickson had not provided her with any verifications of taking anger management and Erickson thought she meant the course she had taken from MCI Framingham who was refusing to provide a certificate it had promised to provide for such verification.  Judge Cannone addressed Melia and stated that since Erickson would

25

Erickson v. Benedetti, et al
Civil No. 11-          (    )
Page 26

be on probation for 5 years it would be a long time and that eventually Melia would receive it.  22 days later Melia, claimed Erickson violated her probation because she failed to complete anger management.  This was an act of abuse of process and retaliation against Erickson when Erickson arrived and asked for a travel permit armed with a motion for the Judge in case that office refused and also armed with a motion for her records which the Probation was refusing to produce pursuant to Judge Cannones orders earlier that year.  Melia repeatedly was abusive and misrepresented herself demanded that Erickson be immediately surrendered causing Erickson to remain until she was heard on this new fraudulent probation allegation knowingly false and fabricated this surrender hearing should have been, as the SJC has held "to the extent possible heard by the sentencing judge"

22.    While she plans to complete a Masters in Nutrition and then work on a J.D. and L.L.M., on 5/24/11 and 22 days after a hearing (on 5/2/11) in front of the sentencing judge (Cannone) on her *pro se* motion to Change Probation Terms the abusive and (non-supervising Probation Officer Melia) issued a Notice of Probation Violation (Add. E1) while probationer was represented by a freshly graduated lawyer, the judge (not the sentencing Judge) heard the proceeding(which goes against the holdings from the SJC (See arguments in support of this Motion For Stay), finding probationer in violation of two (non-criminal conduct) terms by failing to ***complete anger management*** and ***complete community service*** sentenced her to 30 days in the house of correction.  Then

Erickson v. Benedetti, et al
Civil No. 11-          (___)
Page 27

this Judge scolding her said if she stipulated to the three new violations contained in the

newly served notices that morning then the sentenced would be 30 days on a GPS and

she could walk out of the court house that day.  Probationer was under great duress as she

was tortured when incarcerated, she was treated differently due to her being confined to a

wheelchair, deprived necessary and/or adequate medical attentions, pain medication and

restricted for most of the time to absolute solitary confinement. She knew this probation

revocation hearing unfair, and would be appealing it but because her incarceration was so

severely tortuous she started having panic attacks, nausea and seizures causing her to

agree to anything that was presented to her as she had justifiable fears for her safety in

returning to such torturous detainment. Judge (Minehan) then reprobated her with new

conditions issued on 6/17/11 that included infringement on Plaitniff's first amendment

by issuing orders that it was a violation of probation if probationer reported or tried to

communicate with the Commissioner of Probation. Judge Minehan found because

probationer was ordered on 1/11/11 at her sentencing not to possess pets she was in

violation of her probation when she reported to the Kentucky State Police on June 6th,

2011 that her academic project horses were stolen and that because of this reporting to

the KY State Police she was in violation of her probation failing the *no contact* terms.  It

didn't matter to Judge Minehan that Probationer was in Massachusetts at the time of the

reporting to the KY State Police or that her project horses were in KY while she in MA.

Probationer understands that Judges do not possess limitless power in sentencing and that

27

Erickson v. Benedetti, et al
Civil No. 11-       (    )
Page 28

they are required to issue findings pursuant to the MA Dist. Ct Rules 6 & 7 while Judge

Minehan did not she also  denied the Probationer's Motion For The Sentencing Judge

Cannone to hear the Probation Violation Proceeding the hearing that was conducted

together with its results unfairly has caused unconstitutional injury upon Your

Probationer. Judge Minehan in open court stated probationer violated the terms of her

probation condition by "clearly owning" then wrote failing to have "no contact with

animals" Owning is not the language of the initial probation terms which clearly state not

to 'possess pets'. A horse and a service animal(s) are not pets and the wording "own or

owning" is not the same as possession and not part of the written probation contract of

1/11/11 and now as a result of Judge Minehan acting as an appeals judge in reviewing

Judge Cannone's terms of probation Minehan has issued new conditions that are so

severe and improper they also are impossible as they include *to stay way from all animals*

*by 10 yards*.  Probationer is not in control of wild animals, off leash dogs and birds and is

in a wheelchair where the average sidewalk is 6 feet wide while it is impossible and

reasonably dangerous for her avoid by hopping off the curb to avoid the typical passerby

with a leashed animal let alone a leashed animal on the average 5 foot leash.  The U.S.

Supreme Court has said that "there is no word more ambiguous in its meaning than

possession" (*National Safe Deposit Co. v. Stead*, 232 U.S. 58, 34 S. Ct. 209, 58 L. Ed.

504 [1914]). While the original probation conditions issued by Judge Cannone on

1/11/11 (Add.B1) and (Add.I1) required her to "*not to possess pets*" Probationer could

Erickson v. Benedetti, et al
Civil No. 11-       (___)
Page 29

never assume, nor did she ever consider her project horses as pets, and while her service animals are not pets under the law they are trained, documented and recommended (required) by her doctors as reasonable accommodations for coping with her multiple disabilities 28 USC 35 § 104 (definition 'Service Animal') Affidavit Richard Fraser, MD and Affidavit Anthony Erdmann, MD (App. Ex 6 & 7). (the SJC has held "*To the extent possible, it is desirable that probation revocation hearings be heard by the judge who placed the defendant on probation in the first instance.*" *Commonwealth v. Christian*, 46 Mass. App. Ct. 477, 482 n.5 (1999); *see also Commonwealth v. Goodwin*, 458 Mass. 11, 19 n.9 (2010) (citing *Commonwealth v. Christian* for proposition that probation revocation proceedings should be heard by the original sentencing judge) - it was denied by judge Minehan who instead insisted in taking jurisdiction.

23.   Probationer with an abundance of caution was motioning for changing the terms and for clarification so that before she went back home to Kentucky that the issues of her service animals and academic project horses and the animals she would inherently have contact with in her classes that were under supervision by her professors or the academic institution were not going to land her in a situation of a probation violation hearing. This could not be achieved as Willy Davis envisioned and the defendants prevented depriving the Plaintiff of her due process rights at every step of the way.

24.   Probationer's student loans mature if she is not in school for more the six months, that time is now, and while she has no way to pay these back without added benefit of the

Erickson v. Benedetti, et al
Civil No. 11-       (    )
Page 30

degree that she had planned on receiving to help her secure a better position in life.

25.     From dates prior to and after the Plaintiff's release on March 10th, 2011 the probation officer assigned Defendant Melia now removed from Plaintiff's case has been calling Plaintiffs' KY landlord and encouraging him to evict Plaintiff and cause the removal of her horses while Plaintiff's has been paying her rent as usual and arranging for her bloodstock agent (see Affidavit Roger Braugh) to evaluate and transfer her horses. Some of the probation conditions denied Erickson the protections of the 1st Amendment (forbidding her to report probation officers misconduct to the Commissioner), depriving her of property in violation of the 5th Amendment (forbidding her to own property used in relationship to her academic degree and interferences with her right of returning home to KY and this has negatively effected her section-8 benefits, Medicaid and property inside her home in KY.

26.     On the day Plaintiff was wrongly convicted December 16th, 2010, Plymouth Police Officers including Defendant Warnock, broke into her RV without a warrant, calling her trial attorney Gens and conspiring with the Bourne and State Police to seize her RV, hide their crimes, and deprive Erickson her property under the color of law claiming it also allegedly destroying it two months later and immediately prior to her release.

**DEFENDANTS**

27.     By its civil conspiracy and its failure to provide equal protections Defendant Anthony

30

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 31

Benedetti is brought into this suit for professional and private actions is a natural person and currently serves as Chief Counsel of the CPCS since July 2010. Upon information and belief, he is a resident of the Commonwealth and a citizen of the United States. He is also a member of the Massachusetts Bar (hereinafter "Benedetti"). In this position, he is the chief administrator and is also responsible for the overall supervision and workings of the CPCS since July 2010. Benedetti is ultimately responsible for all agency functions and for all acts of the CPCS's subordinates and staff.

28.    Defendant William Leahy is brought into this suit for professional and private actions is a natural person and of July 2010 retired as Chief Counsel of the CPCS. Upon information and belief, he is a resident of the Commonwealth and a citizen of the United States. He is also a member of the Massachusetts Bar (hereinafter "Leahy"). In this position, from the dates material to this Complaint until his retirement in July 2010 he was the chief administrator of and responsible for the overall supervision and workings of the CPCS. Attorney Leahy was ultimately responsible for all agency functions and for all acts of the CPCS's subordinates and staff. Upon information and belief, Leahy resides at 195 Nehoiden Street in Needham, Massachusetts.

29.    Defendant Nancy Bennett is brought into this suit for professional and private actions is a natural person and is Deputy Chief Counsel of the Private Counsel division of the CPCS at all times during her interactions with Heidi Erickson and other defendants. Upon information and belief, she is a resident of the Commonwealth and a citizen of the United

31

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 32

States.  She is also a member of the Massachusetts Bar (hereinafter "Bennett").  Upon

information and belief, Attorney Bennett communicated with and personally assigned the

services of Attorney Markey, and others (William Gens, Elizabeth Caddick and Richard

Heartquist) and did limit, refuse to authorized the services and interfere with the

provision of adequate and necessary representation by these attorneys and their attempt to

diligently and effectively represent in criminal (pretrial, and post conviction) matters the

Plaintiff's interest.  In this position, Attorney Bennett was responsible for, *inter alia*,

billing policies and procedures, the Audit and Oversight Department, audit procedures

and protocols, the CPCS's Performance Standards, billing procedures, and certification

training.

**30.**    Defendant Carol Beck is brought into this suit for professional and private actions is a

natural person who, at all relevant times herein, served as the Co-Director of the Private

Counsel division of the CPCS program of the CPCS.  Upon information and belief, she is

a resident of the Commonwealth and a citizen of the United States.  She is a member of

the Massachusetts Bar (hereinafter "Beck").   In this position, Attorney Beck is

responsible for, *inter alia*, administering the Private Counsel division program for all

attorneys who accept appointments from the Commonwealth's trial court system.

**31.**    Defendant Nancy O'Leary, is brought into this suit for professional and private actions is

a natural person and Staff Attorney for the Criminal Trial Support Unit of the CPCS

program.  Upon information and belief, she is a resident of the Commonwealth and a

Erickson v. Benedetti, et al
Civil No. 11-        (    )
Page 33

citizen of the United States. She is a member of the Massachusetts Bar (hereinafter "O'Leary").   In this position, Attorney O'Leary is responsible for, *inter alia*, administering the Private Counsel division program for all attorneys who accept appointments from the Commonwealth's trial court system.

32.   Defendant Armand Potenza Chief Financial Officer is brought into this suit for professional and private actions is a natural person who currently serves as the Audit Counsel of the CPCS's Audit and Oversight Department.  Upon information and belief, he is a resident of the Commonwealth and a citizen of the United States (hereinafter "Potenza").  The Audit and Oversight Department was established pursuant to Section 12 of Chapter 211D of the Massachusetts General Laws (hereinafter "Chapter 211D"). Potenza heads said department and administers the program that monitors billing and private attorney compensation and also compensation of defense experts, and other services.

33.   The above seven Defendants are also called the "CPCS Defendants" and CPCS is an agency of the Commonwealth of Massachusetts responsible to maintaining criminal defense services for the indigent in Massachusetts.

34.   Administrative Offices of the Trial Court "AOTC" is an agency of the Commonwealth of Massachusetts responsible to maintaining the Courts and Court services with in Massachusetts.

35.   Robert Mulligan, "Mulligan" is brought into this suit for professional and private actions

33

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 34

is a natural person and currently serves as Chief Administrator the Administrative Offices of the Trial Court "AOTC". Upon information and belief, he is a resident of the Commonwealth and a citizen of the United States. He is also a member of the Massachusetts Bar (hereinafter "Mulligan"). In this position, he is the chief administrator and is also responsible for the overall supervision and workings of the AOTC, all the Courts of Massachusetts and is ultimately responsible for all agency functions and for all acts of the AOTC's subordinates and staff.

36.  Daniel Sullivan, "Sullivan" is brought into this suit for professional and private actions is a natural person and currently serves as the General Counsel to the AOTC. Upon information and belief, he is a resident of the Commonwealth and a citizen of the United States. He is also a member of the Massachusetts Bar.

37.  Ronald Corbett, "Corbett" is brought into this suit for professional and private actions is a natural person and currently serves as the Commissioner for Probation in Massachusetts. Upon information and belief, he is a resident of the Commonwealth and a citizen of the United States. In this position, he is the chief administrator and is also responsible for the overall supervision and workings of Probation in Massachusetts, in most of all the Courts of Massachusetts and is ultimately responsible for all agency functions and for all acts of this office including its subordinates and staff.

38.  Lynn Bissonnette "Bissonnette" is brought into this suit for professional and private actions is a natural person and currently serves as the Superintendant for MCI in

34

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 35

Framingham, MA. Upon information and belief, she is a resident of the Commonwealth and a citizen of the United States. In this position, she is the chief administrator of MCI Framingham and is also responsible for its overall supervision and workings in Massachusetts and is ultimately responsible for all MCI Framingham functions and for all acts of this office including its subordinates and DOC staff.

39.   Roberta Guez, "Guez" is brought into this suit for professional and private actions is a natural person and currently serves as the Chief Operating Officer of Taunton State Hospital, in Taunton, MA. Upon information and belief, she is a resident of the Commonwealth and a citizen of the United States. In this position, she is the chief administrator and is also responsible for the overall supervision and workings of Taunton State Hospital, and is ultimately responsible for all agency functions and for all acts of this office including its subordinates and staff.

40.   Mark Stankiewicz, is brought into this suit for professional and private actions is a natural person and currently serves as the Town Manager of Town of Plymouth, MA. Upon information and belief, he is a resident of the Commonwealth and a citizen of the United States. In this position, he is the chief administrator and is also responsible for the overall supervision and workings of Taunton State Hospital, and is ultimately responsible for all agency functions and for all acts of this office including its subordinates and staff.

41.   Timothy Norris, is brought into this suit for professional and private actions is a natural person and currently serves as Chief Probation officer for the Plymouth Probation

35

Erickson v. Benedetti, et al
Civil No. 11-        (__)
Page 36

Department and is responsible for the actions of Probation officers Melissa Melia. Norris

is believed to be a resident of the Commonwealth of MA and a US Citizen.

42.    Melissa Melia, a Probation Officer one assigned to Plaintiff is brought into this suit for

professional and private actions is a natural, is a probation officer with the Plymouth

probation department and is believed to be a resident of the Commonwealth of MA and a

US citizen.

43.    Michael Boterie, is brought into this suit for professional and private actions is a natural

person, is the chief of the Plymouth Police Department and is ultimately responsible for

and supervises the actions and training of the Officers whom are employed by this

department.

44.    John Rogers, is brought into this suit for professional and private actions is a natural

person, is the deputy cheif of the Plymouth Police Department and is ultimately

responsible for and supervises the actions and training of the Officers whom are

employed by this department.

45.    Charles Warnock, is brought into this suit for professional and private actions is a natural

person, is an officer of the Plymouth Police Department and is ultimately responsible for

and supervises the actions and training of the Officers whom are employed by this

department.

46.    James Keegan, is brought into this suit for professional and private actions is a natural

person, is a police officer of the Plymouth Police Department and is ultimately

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 37

>           responsible for and supervises the actions and training of the Officers whom are
>           employed by this department.

47.     William McCuster, is brought into this suit for professional and private actions is a
        natural person, was an animal control officer of the Plymouth Police Department and is
        ultimately responsible for and supervises the actions and training of the Officers whom
        are employed by this department.

48.     Michael Burke, is brought into this suit for professional and private actions is a natural
        person, is a police officer of the Plymouth Police Department and is ultimately
        responsible for and supervises the actions and training of the Officers whom are
        employed by this department.

49.     Dennis Woodside, is brought into this suit for professional and private actions is a natural
        person, is the chief of the Borne Police Department and is ultimately responsible for and
        supervises the actions and training of the Officers whom are employed by this
        department.

50.     William Fall, is brought into this suit for professional and private actions is a natural
        person, is a veterinarian whose principal place of practice in Borne accepted to treat some
        of Plaintiff's Persians and was negligent and committed malpractice for the Plymouth
        Police Department and Town of Plymouth.

51.     Linda Bracket, of Raynham, MA is brought into this suit for professional and private
        actions is a natural person, and operates a cat rescue whose principal place of practice in

37

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 38

Raynham, MA and operates Nantasket Orphaned Animal Haven ("NOAH") accepted to take Plaintiff's Persians against authorization from Plaintiff and was negligent and careless and caused the death of 5 of the Plaintiff's Persians for the Plymouth Police Department and Town of Plymouth.

52.   Douglas Humphries is brought into this suit for professional and private actions is a natural person, an assistant district attorney of the District and county of Plymouth whose principal place of practice is Brockton MA.

53.

54.   Doe 1-3 upon information and identification the Plaintiff will amend.

55.   Plaintiff alleges that Defendants have violated Title II of the Americans with Disabilities Act ("Title II" or "the ADA"), 42 U.S.C. §§ 12131-34, and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "the Rehabilitation Act"), 29 U.S.C. § 794, by building and/or renovating prison facilities that do not comply with federal accessibility standards, by excluding Plaintiff from a wide range of correctional programs on the basis of Plaintiff's disabilities, by failing to provide necessary and adequate medical treatment, pain relief, sanitary facilities, make reasonable accommodations to Plaintiff, and by failing to provide appropriate auxiliary aids and services to Plaintiff where necessary for effective communication.

56.   At all times stated herein, all the public Defendants were acting under the color of state law knew or should have know their actions were unlawful, negligent and malicious.

38

Erickson v. Benedetti, et al
Civil No. 11-　　(　)
Page 39

57. All Defendants have been named in their individual or professional capacities where the jurisdiction and law permits, except with respect to Plaintiff's claims for prospective injunctive relief to prevent future violations of federal law. See Ex parte Young, 209 U.S.123, 159-60 (1908).

58. Jessica Cristani, of 42 Stillwater Drive Plymouth, MA. a private citizen who on December 31st, 2008 assaulted and battered Plaintiff by pushing her over, intimidation, humiliation, hate crimes against the Plaintiff causing her pain and humiliation, public scorn, bruising and discrimination, conspiracy and false police reporting.

59. Officer Doe arrived to the reported assault and failed to provide protective services to the disabled Plaintiff on December 31st, 2008 and at any time thereafter.

## PRELIMINARY STATEMENT

14. (1) Plaintiff has pleaded a prima facie case under title II and III of the ADA.

15. Congress has specifically abrogated the States' eleventh amendment immunity for suits brought pursuant to the ADA Title II, see U.S. v Georgia, 546 U.S. 151.

16. Under title II of the ADA the defendants can be sued in their official capacities; and

17. Judges do not enjoy absolute immunity for acts that are administrative rather than judicial in nature, see Stump v. Sparkman, 435 U.S. 349, 356 (1978), Forrester v. White, 484 U.S. 219, 224-225 (1988), and Cameron v. Seitz, 38 F.3d 264, 271 (6th Cir. 1994).

18. In August and September 2011 Erickson requested reasonable accommodations from the AOTC in a case conducted in Middlesex Superior Court, that because of her disability

39

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 40

she required additional time to respond to the defendant's motion, then when Defendant filed another motion she requested an additional accommodation that included only being heard on one motion at a time and rescheduling the Court date to be heard on the other motion. Despite Erickson , nearly dying and while her condition deteriorated over the 2 month period this court, the AOTC and Judge Hinkle refused to provide Erickson the necessary additional time and caused her great harm (not only did her high blood pressure sky rocket but her anemia complicated by high blood pressure caused her to regularly circome to faint, dizziness and nausea. In the court room the judge yelled at her repeatedly and told her that she would not be allowed to submit a rebuttal or responsive opposition. Erickson awaits the decision on the defendant's Motion To Dissolve Injunction issued in 2005 and renewed twice in 2009 to prevent homelessness due to the Cambridge Housing Authority's ("CHA") discrimination, a complaint that she filed originally in HUD's offices of Fair Housing, investigated by the Cambridge Human Rights Commission who found probable cause, this decision was adopted by the MCAD and suit was filed by the Attorney General in 2004 and a preliminary injunction requiring CHA continued obligation to keep Erickson in the section-8 program. In 2009 that court issued a finding granting summary judgment to defendants CHA and then reissued the Preliminary Injunction pending appeal requiring the CHA to maintain Erickson's section-8 status. That court based its findings that Erickson was not disabled because an AOTC employee Judge Winik heard a case brought by Erickson's landlord attempting to evict her from her Beacon Hill home. Erickson presented sufficient evidence including the landlord's incourt admission that he received the section-8 papers but did not wish to have a section-8 tenant after Erickson moved in and requested reasonable accommodations supported this

eviction with testimony from Dr. Richard Fraser who testified that Erickson was disabled and required service animals as a reasonable accommodation to aid her with the symptoms of her disability epilepsy. Judge Winik's opinion and Judgment did not cite the facts are presented to him, instead Judge Winik made up facts, did not quote Dr. Fraser's testimony and when he did misquoted him. In 2009 Dr. Fraser recalling his testimony in the LeBlanc matters and as a direct result of the Defendant Sullivan's Feb. 19., 2009 letter excluding Erickson's access to the Courts in Massachusetts responded to that letter to correct its misinterpretation and misquotes from Judge Winik. Judge Fremonth Smith in allowing the CHA's motion for summary judgment found that because of Judge Winik's decision Erickson was not disabled despite the findings issued by the US Social Security Office, based on 10 doctors, some specialists, recommendations and findings from either medical records reviews of their own examinations of Erickson found her disabled and not able to work dated in January 2003 Judge Winiks decision was dated March 2003 after Erickson was determined permanently disabled.

19.     The Defendants actions are made actionable under 42 USC 1983, the 5th, 6th, 8th and 14th Amendments to the United States Constitution. The Defendants actions were inadequate, unreasonable, negligent, malicious, conspired and unconstitutional and were done under the color of law.

20.     On March 17 2009, the Plymouth Police in a veiled well publicized media event searched Plaintiff's home without a search warrant and then hours later obtained an tainted warrant by making up evidence to support an application for a warrant, returned to Erickson's home and executed a search, taking numerous pictures conveniently releasing copies of these photos to the media, then to Erickson's landlord's eviction attorney Emil Ward to use in a Preliminary

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 42

Injunction action scheduled for March 18th, 2009 that Ward filed the previous month in the
Plymouth Housing Court.

21.     There were no arrests as a result of the search or seizure but the Police indicated it may or may
        not charge the Plaintiff. But at 3:30 am on March 24th, 2009 several officers entered the
        Plaintiff's home at 5 Lothrop Street and arrested Mr. Peter Karpowicz who ask why there were
        there, with no explanation or warrant they also arrested Plaintiff and held her until 2pm and
        then arraigned her on the malicious fabricated charges of disturbing the peace by a jury trial
        was found not guilty and was also arraigned on 9 counts of animal cruelty.

22.     Plaintiff immediately filed a motion for the return of 2 cats, documented service animals and 11
        carriers valued at nearly $1000.00 not subject of the criminal charges then called Nancy
        Bennett to request an assignment (Pilgrims Advocates the local area agency responsible for
        organizing indigent defense resources and supervision of indigent defense attorneys had no
        attorney who was willing to take Erickson's case) and explained that she requested a immediate
        hearing on the return of property taken without a legitimate warrant allowed by Chief Justice
        Brownell scheduled for March 27th, 2009. Bennett assigned Christopher Markey.

23.     Markey failed to pursue the return of property petitioned in the SJC by an order from Bennett
        advising, threatening and refusing to pay him for his time to advocate and defend Erickson.
        Erickson complained to Beck and Bennett who stated that they only could request a review of
        Markey's conduct with Erickson a review from Pilgrim's Advocate Officer, Bergeron who did
        not adequately review the matter.   Markey grew increasingly resentful and could not
        communicate with Erickson.  Erickson complained to the Bennett, Beck, Leahy about
        providing her with an attorney who would be sensitive and be able to communicate to her

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 43

meaningfully due to her communications disability as a reasonable accommodation.  After two months of unanswered requests, Erickson sent a letter requesting same to O'Leary who responded that she, nor anyone at CPCS was required to provide Erickson with any meaningful response, disability accommodation or reasonable type of accommodation because Erickson requested same due to her disability.  Erickson then spoke to Massachusetts Executive Office on Disability, attorney Barbara Lygberger who spoke directly with O'Leary and returned to Erickson with advice to file a complaint with the Dept. of Justice because CPCS is greatly suspected of violating the laws as it feels as an agency void of compliance to the ADA Title II and has never and will not partake in the interactive process to accommodate Erickson's identified disability unless it is mandated to do so by the DOJ. Then in the fall of 2009 Plaintiff filed a request for public records for all of CPCS's policy and procedures related to requests under the Americans with Disabilities Act Title II and a reasonable accommodations procedures O'Leary answered with "CPCS is not required to provide any reasonable accommodations pursuant to the Americans with Disabilities Act". Erickson filed a complaint and requested assistance once again from the Massachusetts Executive Offices on Disability and its attorney Barbara Lybarger, called and spoke directly to O'Leary who refused to accept her advice.  Barbara Lybarger, Esq. once again advised Erickson to a file a complaint with the Department of Justice.

24.    Markey soon after withdrew and Erickson was left without an attorney until Brisson was assigned who demonstrated odd characteristics, was abusive and yelled at Erickson several times.  Plaintiff reported to him that upon her viewing her specialized service cat named Beautiful that he was ill and required immediate medical attention for an upper respiratory

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 44

infection that she became aware of from listening to his weezing while he desperately tried to escape from his negligent handlers who were evidently not taking care of him as he looked as if he lost 5 + pounds and was dirty and stained, he attempted to jump into her arms was especially difficult for her to bare. Brisson was extremely insensitive and failed to intervene for the health and well being of Erickson's property and necessary disability accommodation, to follow court orders for treatment of all of Erickson's cats issued April 3rd, 2009 and failed to call the Plymouth Police and instruct same to take this cat to a veterinarian according to the court's order.

25.   From March 2010 through May and June 2010, Attorney Brisson engaged in a very contentious interaction with Plaintiff and then told her himself personally while laughing that Beautiful had died. Erickson demanded that Beautiful be Court Order preserved and an autopsy taken by an out-of-state laboratory none of these defense strategies and property protections were ever undertaken by the abusive Brisson.

26.   Plaintiff filed suit in the US District Court of Kentucky who transferred the case to Massachusetts by claiming that all but the Plaintiff were located in Massachusetts. Then that court by claiming Erickson failed to file a good faith statement dismissed the case sua sponte and failed to provide her the necessary protections of the Constitution in an almost conspiratory manner maliciously abusive against the intentions of Congress in so doing aiding and abetting the violations claimed in that case and providing support to the Plaintiff's claim that a change of venue was necessary.

27.   Brisson was allowed to withdraw from representing Erickson and William Gens was assigned. But the US case filing infuriated all the CPCS Defendants they refused to talk to Erickson

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 45

except for Willy Davis, Esq. Chairman of the Board of CPCS. In fact, Erickson had to call

him numerous times to report when Attorney Gens had failed to progress her case by getting

the discovery, receipts of $100's of dollars worth of animal food, the medical records or having

any conversations with the defense expert Dr. Poling or getting CPCS to pay him the thousands

of dollars from at least 6 court orders for his payments. Weeks would go by without any

communications from Gens and trial was scheduled in less then a month. Erickson had to call

attorney Davis and Gens would call or email Erickson shortly thereafter.

28.    Since then, Erickson has been systematically retaliated against by the Defendants for exercising

her 1st amendment rights to report discrimination and inadequate defense, Erickson had no

meaningful delivery of defense strategy. In October 2010 Judge Cannone Ordered Gens to

produce the exculpatory receipts and have these ready for trial, after Erickson complained in

open court that she could not get him to retrieve same, he advised Erickson that CPCS, Bennett

and Beck refused to pay and/or reimburse Gens for his diligence to acquire this defense

material. Gens failed to prepare this defense material and CPCS, Bennett and Beck interfered

with Erickson's ability to and deprived her of a fair trial and the protections of the 5th, 6th, 8th,

and 14th Amendment and interfered with defense attorneys compensation for the exceptional

time and effort that Plaintiff's case required. In fact, in an obvious act of direct retaliation,

Bennett, Beck and Potenza refused to process any invoice, or voucher to pay the expenses and

Court ordered (since April 2009) defense expert Dr. Rodney Poling prior to trial and as to the

date of this filing (November 2011) a bill including testifying at trial, over which totaled over

$7,700.00, including several thousand dollars of Dr. Polings out of pocket expenses, based

upon a series of pretextual and illegitimate grounds including the voucher was not filed out

Erickson v. Benedetti, et al
Civil No. 11-        (      )
Page 46

correctly, it was not being signed by Gens or Brisson or was required to be signed by Markey etc. etc., and etc., then in the summer of 2011 the CPCS ran out of money for that fiscal year.

29.   CPCS they have never asked Erickson about her concerns, or what disability accommodations she required and noone of the those under the CPCS control has ever attempted to have any interactive conversations about disability accommodations with the Plaintiff and in order to avoid addressing the Defendants' deceitful, unethical, and improper conduct; and otherwise violating and retaliating against Plaintiff's civil and constitutional rights. Specifically, the Defendants' conduct violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States and aids and abets the AOTC and Probation Commissioner and his staff to violate Erickson rights not all inclusive of the 1st, 5th and ability to return home and/or travel in the United States. There are also numerous other common law and statutory counts that arise under both federal and state law, including civil rights violations.

30.   On a more basic level, however, and from a public policy perspective, Attorney's Gens, Caddick, Heartquist, Brisson, Markey and Lev are officers of the court who took a solemn oath (pursuant to Section 38 of Chapter 221 of the Massachusetts General Laws) to uphold and support the Constitutions of the United States and of the Commonwealth, and to represent their clients to the best of their knowledge and ability. The CPCS Defendants' reprehensible conduct throughout Plaintiff's case forced these criminal defense or appellate attorneys to make a stark and harsh choice: Advocate for and defend their indigent client and face financial ruin or breach their ethical obligations and face grave professional and licensure consequences. In essence, this Hobson's choice created a *de facto* state of indentured servitude as long as the attorneys wanted to continue practicing law as a member in good standing of the Massachusetts

Bar so they intentionally failed to provide adequate services and/or nondiscriminatory services

to the Plaintiff resulting in great harms that she is not totally aware of today but will amend.

31.     Furthermore, when Plaintiff recognized that the Defendants created an untenable conflict-of-

interest between Plaintiff's right to competent and zealous representation and her attorney's

right to be compensated for the extraordinary amount of time which the case required, and/or

her disability required as a reasonable accommodation due to her mutilple disabilities and

including her communications disability Plaintiff in May 2011 requested the Court Judge

Cannone appoint an attorney not controlled by, reliant upon or assigned by the CPCS thereby

allowing this attorney to protect his or her client's interests as ethically required to do by the

Massachusetts Rules of Professional Conduct and the CPCS's own ethical standards, by

apprising the court fully of the situation. As a result of taking this action, the Defendants

unlawfully retaliated against her and have abused, and continue to abuse, their positions of

authority and power entrusted to them by the CPCS and the Commonwealth. In addition, Judge

Cannone has not heard any other of Plaintiff's motion and has not recused herself therefrom but

by actions of both defendant McCue and Judge Minhan Cannone was not sent the motions filed

by the Plaintiff despite Cannone claiming that all matters from Plaintiff be heard by her.

32.     It should be emphasized, however, that despite the Defendants' improper conduct and the many

obstacles which they created in violation of their own state-sanctioned duties and

responsibilities remains at odds with no adequate post conviction relief her appeal is not being

prepared, probation officers abuse her, she is required to return to home, school and is being

deprived any rights to complain about or contact probation, while she is unlawfully being

deprived rights and guarantees to property, travel and necessary medical attention at great

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 48

personal cost to herself.

33.     Although the Defendants are charged with protecting and defending the constitutional rights of

the indigent, they intentionally and knowingly violate the constitutional rights of the very

attorneys who are appointed to ensure that the most vulnerable and helpless members of society

have competent, diligent, and zealous representation in matters of significant constitutional

importance and public concern and deprive Plaintiff protections of same   Ironically, the

Defendants often support lawyers such as those mentioned herein in public and legislative fora

by drawing attention to the essential services that they provide to the Commonwealth's citizens,

and advocate vigorously on their behalf.  But because Erickson has filed suit in June 2010 and

reported same to agencies for the protection of the disabled (Mass Executive Offices on

Disability) they have retaliated made unlawful by Congress and indeed actionable by Erickson.

Indeed, during the so-called "assigned counsel crisis" that occurred in the aftermath of the

Supreme Judicial Court's decision in Lavallee v. Justices in the Hampden Superior Court, 442

Mass. 228 (2004)—in which Attorneys Leahy and Bennett were personally involved—Attorney

Leahy made numerous statements to the media about the importance of indigent counsel, the

necessity of increasing their hourly rates, and the high quality of representation that they

provide to the indigent. See, e.g., Leonard Post, *Indigent Defense Services Blasted*, NAT'L L.

J., July 12, 2004, at 1 ("Like the rest of the nation, we haven't lived up to Gideon [v.

Wainwright], which stands for the proposition that a poor person should get as good a lawyer as

a person of means.  It's a disgrace."); William J. Leahy, *State Must Act on Counsels' Wages*,

BOSTON GLOBE, Apr. 27, 2005, at A22 (discussing the "disgraceful hourly rates for assigned

counsel" and noting that "it is time for the Legislature to act upon the commission's

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 49

recommendation for a responsible hourly rate increase."); John O. Cunningham, *William J. Leahy*, MASS. LAW. WKLY., Dec. 27, 2004, at B11 ("Our assigned counsel system was singled out . . . as the best for having standards of representation and enforcing them.").

34. The actions taken by the Defendants were purposely designed to obstruct, frustrate, and hinder Plaintiff's ability to receive diligent, competent, and zealous representation in accordance with Markey's, Gens, Caddick's, Heartquist, Lev's, Brisson, and others ethical duties. Said actions induced the CPCS defendants to violate Chapter 211D.

35. The CPCS's failure to honor its payment obligations to its assigned attorneys in Erickson's case is a serious and unusual circumstance to overcome the Absention considerations of any federal district Court and previously decided by the First circuit in Batterman v CPCS No.07-2653

36. CPCS by these actions expressly instructed Plaintiff's defense attorneys to provide her a qualified indigent client with less thorough and diligent representation than they provide to their affluent private clients, in complete violation of the CPCS's Performance Standards and the Massachusetts Rules of Professional Conduct.

37. Upon information and belief CPCS defendants  declaration accurately reflected a firmly entrenched and pervasive belief among the CPCS leadership that the indigent are only entitled to limited representation (even in extraordinary circumstances such as Plaintiff's case). This belief is carefully hidden from public and legislative scrutiny by the CPCS leadership.

38. Defendants failed to provide the supervision and oversight required by their positions and pursuant to Chapter 211D, despite their knowledge of the intense demands and the antidiscrimination laws in this country.

39. As the CPCS defendants are attorneys themselves, all of whom hold senior positions in an

Erickson v. Benedetti, et al
Civil No. 11-      (__)
Page 50

agency mandated to protect and defend constitutional rights, the Defendants are particularly well-versed and educated on constitutional matters and were, at all relevant times herein, aware that their conduct violated the clearly established statutory and/or constitutional rights of Plaintiff.

40.  Said failure by the Defendants was deliberate and intentional, and purposely designed to deprive Plaintiff into deprivations of her constitutional rights in a complex trial and post conviction matters The Defendants completely failed to perform their supervisory, oversight, and compliance responsibilities as dictated in sections 5, 6, 6A, 9, 10, 12 and other sections of Chapter 211D.

41.  As such, in violation of section 12 of Chapter 211D, and of the Due Process clauses of the Constitution of the United States.

## SUMMARY OF COUNTS

Plaintiff has pled numerous counts for relief. The first counts respectfully request that this Honorable Court find that that the Defendants' practices and conduct as set forth herein are unconstitutional and illegal. Injunctive relief is also requested where necessary and appropriate.

Plaintiff also requests that this Court declare that: **(i)** The actions of the Plymouth Defendants' seizure and search of her home, including entering her home on March 17, 18 and 24, unconstitutional and a pattern and practice of discrimination; **(ii)** the CPCS Defendants' have caused deprivation of due process by limiting their employees and/or controlling their time by refusing to reimburse same is unconstitutional **(iii)** the probation defendants have in numerous unconstitutional practices deprived the Plaintiff's of due process and intentionally detaining her in Massachusetts is therefore unconstitutional. Other Counts requests that the Court find that a fiduciary or heightened relationship exists between

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 51

Plaintiff and CPCS defendants.    Counts address deprivations of Plaintiff's civil rights as set forth

above under both Title 42 of the United States Code and the Massachusetts Civil Rights Act.  For

example, addresses the conspiracy which existed between the Defendants to interfere with Plaintiff's

civil rights, while others addresses the failure by Defendants Leahy Benedetti, Bennett and Beck

prevent the CPCS and the other Defendants from depriving Plaintiff of her civil rights.

Other Counts allege Defendants retaliated against Plaintiff in violation of Massachusetts public

policy; **(b)** the ADA.

### ► COUNT I ◄
### DECLARATORY AND INJUNCTIVE RELIEF
#### (Unconstitutionality of Interfering with Due Process)

**42.**    Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates

them herein by reference as though set forth in full against all the Defendants and by proof at

trial.

### ► COUNT II ◄
### VIOLATION OF 1st AMENDMENT

**43.**    Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates

them herein by reference as though set forth in full against the Commonwealth Defendants and

by proof at trial.

### ► COUNT III ◄
### VIOLATION OF 4th AMENDMENT

**44.**    Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates

them herein by reference as though set forth in full against the Plymouth Defendants and by

proof at trial.

Erickson v. Benedetti, et al
Civil No. 11-      (   )
Page 52

## ► COUNT IV ◄
## VIOLATION OF 5th AMENDMENT

**45.**   Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates

them herein by reference as though set forth in full against all Defendants and by proof at trial.

## ► COUNT V ◄
## VIOLATION OF 8th AMENDMENT

**46.**   Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates

them herein by reference as though set forth in full against all Defendants and by proof at trial.

## ► COUNT VI ◄
## VIOLATION OF 14th AMENDMENT

**47.**   Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates

them herein by reference as though set forth in full against all Defendants and by proof at trial.

## ► COUNT VII ◄
## INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONS

**48.**   Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates

them herein by reference as though set forth in full against all Defendants and by proof at trial.

**49.**   The Defendants (CPCS and its employees, Probation and its employees, McQue) interfered

with Plaintiff's prospective economic advantage and relations by taking actions including, but

not limited to, refusing to reimburse assigned counsel for work performed in representing

Plaintiff in pretrial, trial and post conviction matters not all inclusive actions to depriving her of

her property but also interfering with federal benefits, medical treatment and educational goals.

And intentionally interfering with zealous, effective and meaningful representation and

Erickson v. Benedetti, et al
Civil No. 11-          (___)
Page 53

advising Plaintiff of her rights as it relates to these advantageous relationships as it relates to her being subject to criminal prosecution as indigent client.

50. The Defendants' interference was improper in motive and/or used improper means.

51. As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered direct, indirect, and consequential damages, including, but not limited to:  Constitutional damages, the loss of irreplaceable property, severe physical and emotional pain; and all damage and harm done to her reputation, future income and prospective value of the property.

## ► COUNT VIII ◄
## CIVIL CONSPIRACY

52. Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates them herein by reference as though set forth in full against all Defendants and by proof at trial.

53. Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through  above and incorporates them herein by reference as though set forth in full.

54. The Defendants conspired to commit the following wrongful and/or tortious actions against Plaintiff, including, but not limited to:  Violating Plaintiff's constitutional and civil rights; intentionally interfering with and/or causing a breach of the contractual relationship between Plaintiff and Karpowicz, Locker, Newberry; punitively ignoring and refusing to provide reasonable accommodation to Plaintiff; retaliating against Plaintiff; intentionally committing Constitutional wrongs, intentionally failing to follow the antidiscrimination laws in MA; engaging in fraudulent and deceitful conduct; intentionally interfering in Plaintiff's advantageous and business relations; and knowingly committing unfair and deceptive business practices.

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 54

**55.**     As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered direct,
indirect, and consequential damages. Plaintiff is also unaware of all the damages and reserved
the right to amend and or after proof at trial. Plaintiff has been deprived her rights and
protections including all damage and harm done to her reputation.

## ► COUNT IX ◄
## NEGLIGENT MISREPRESENTATION

**56.**     Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through above and
incorporates them herein by reference as though set forth in full.

**57.**     The Defendants (CPCS employees, Commissioner of Probation and its employees, Town of
Plymouth and its employees and the Dept of Safety and its employees), through their actions
and statements, made numerous misrepresentations and omissions throughout their relationship
with Plaintiff on matters including, but not limited to:  The failure of public duty, equal
protection, due process assistance, their oversight efforts throughout the time period in this
matter the sufficiency of defense representation; and other negligent misrepresentations and
omissions during advocacy which have damaged Plaintiff.

**58.**     The Defendants failed to exercise due diligence prior to making said misrepresentations or
engaging in said omissions.

**59.**     Said misrepresentations or omissions were at all times material.

**60.**     Plaintiff relied and acted upon said misrepresentations or omissions.

**61.**     As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and
continues to suffer direct, indirect, and consequential damages, including, but not limited to:
proof at trial. Plaintiff unaware of all damages at this time reserves her right to amend.

Erickson v. Benedetti, et al
Civil No. 11-    (___)
Page 55

62.    Plaintiff possesses a constitutionally-protected property interest, entitlement, and legitimate
       claim in her protection of the property of her federal benefits including her section-8 benefits,
       medicare and Medicaid benefits, federal student loans and her animal property.   The practices
       and procedures as set forth herein are violations of the due process due to the Plaintiff and
       unconstitutionally deprived.

63.    Plaintiff has been irreparably harmed due to the deprivation of his constitutional rights by the
       Defendants.

### ► COUNT X ◄
### DECLARATORY AND INJUNCTIVE RELIEF
### (Unconstitutionality of Defendants' Actions)

64.    Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates
       them herein by reference as though set forth in full.

65.    Consequently, Plaintiff respectfully requests that this Honorable Court declare that the
       Defendants' practices constitute: (1) a taking of private property for public purposes without
       just compensation; (2) a taking of property without due process of law; and/or (3) a denial of
       equal protection, in violation of the Fifth and Fourteenth Amendments and any other applicable
       provisions of the Constitution of the United States.

66.    Plaintiff has been irreparably harmed due to the deprivation of her constitutional rights by the
       Defendants.

67.    Plaintiff also respectfully requests that the Defendants be enjoined and compelled to pay
       Plaintiff fair compensation for the property it destroyed and by proof at trial.

68.    Plaintiff further requests that the Defendants be permanently enjoined from engaging in the
       practices described herein against her and enjoined with interferences with her education,

Erickson v. Benedetti, et al
Civil No. 11-         (___)
Page 56

academic pursuits, visiting her parents, her home and her housing.

## ► COUNT XI ◄
### DECLARATORY AND INJUNCTIVE RELIEF
### (Unconstitutionality of Defendant Commonwealth and Plymouth's taking)

**69.**   Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates them herein by reference as though set forth in full.

**70.**   The Defendants actions by taking her property without right, authorization or warrant and destroying same without due process and depriving Plaintiff her economic benefit.

**71.**   The practices and procedures as set forth herein are known to exist by the Defendants and reliance upon administrative relief would be inadequate and/or futile.

**72.**   Consequently, Plaintiff respectfully requests that this Honorable Court declare that the Defendants' actions constitute: (1) a taking of private property for public purposes without just compensation; (2) a taking of property without due process of law; and/or (3) a denial of equal protection, in violation of the Fifth and Fourteenth Amendments and any other applicable provisions of the Constitution of the United States.

**73.**   Plaintiff has been irreparably harmed due to the deprivation of her constitutional rights by the Defendants.

**74.**   Plaintiff also respectfully requests that the Defendants be enjoined and compelled to pay Plaintiff for all property which they have unlawfully deprived her as a result of said actions.

**75.**   Plaintiff further requests that the Defendants be permanently enjoined and enjoin Defenndants from interfering with her animal therapy.

## ► COUNT XII ◄
### VIOLATION OF 42 U.S.C. § 1983 FOR DEPRIVATION OF CIVIL RIGHTS

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 57

76.    Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates them herein by reference as though set forth in full.

77.    At all times relevant herein, the conduct of all Defendants was subject to 42 U.S.C. §§ 1983, 1985, 1986, 1988, and other applicable sections.

78.    Plaintiff possesses a property interest in, and legitimate entitlement to, the benefits of her federal section-8 and other property interests.

         Acting under the color of state law, the Defendants at all material times herein denied and deprived, and continue to deny and deprive, Plaintiff's rights, privileges, and/or immunities secured by the Constitution of the United States and/or by federal laws.

79.    Even though the Defendants have not yet heard Plaintiff on appeal the defendants are depriving Plaintiff due process and she has a right and is not precluded from initiating a civil rights claim against them.  See Patsy v. Florida Board of Regents, 457 U.S. 496 (1982) (holding that exhaustion of state administrative remedies is not a prerequisite to bringing a cause-of-action under 42 U.S.C. § 1983).

80.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer direct, indirect, and consequential damages.


## ► COUNT XIII ◄
### VIOLATION OF 42 U.S.C. § 1985 FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS

81.    Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates them herein by reference as though set forth in full.

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 58

82.    As a result of their ongoing concerted activity, the Defendants, acting under the color of state law, conspired to deny and deprive Plaintiff of her rights, privileges, and/or immunities secured by the Constitution of the United States and/or by federal law, as set forth above.

83.    As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and continues to suffer direct, indirect, and consequential damages.

## ► COUNT XIV ◄
## VIOLATION OF 42 U.S.C. § 1986 FOR NEGLECT TO PREVENT

84.    Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates them herein by reference as though set forth in full.

85.    Bennett was acting under the direction and control of Benedetti, and Leahy, who are ultimately responsible for all agency functions and for all acts of the CPCS's subordinates and staff.

86.    Acting under color of state law and pursuant to CPCS policy, rule, or custom, Attorneys Benedetti and/or Leahy knowingly, deliberately, recklessly, or with gross negligence failed to instruct, supervise, oversee, direct, and control on a continuing basis, Attorneys Markey, Brisson, Gens, Caddick, Lev, Heartquist and others in their duties to refrain from deprivations of Constitutional protections of Plaintiff and her rights. Defendants' deceitful, unethical, and improper conduct; and continuing to otherwise deprive Plaintiff of her constitutional and statutory rights, privileges, and immunities secured by the Constitution of the United States and/or by federal law.

87.    Attorneys Leahy and/or Benedetti had knowledge or, had they diligently exercised their duties to instruct, supervise, oversee, direct, and control on a continuing basis, should have had knowledge that the wrongs conspired to be done and continuing to be done to Plaintiff, as

Erickson v. Benedetti, et al
Civil No. 11-      (___)
Page 59

alleged, were about to be committed and are still currently being committed. Leahy and/or

Benedetti have the power and authority to prevent or aid in preventing the commission of said

wrongs, could have done so by reasonable diligence, and knowingly, deliberately, recklessly, or

with gross negligence failed or refused, and continue to fail or refuse, to do so.

88.   Leahy and/or Benedetti directly or indirectly, under color of law, approved, encouraged, or

ratified and continue to approve, encourage or ratify the unlawful, deliberate, reckless, and

wanton conduct of Attorneys Bennett, O'leary, Bronstein, Beck and others

....   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered and

continues to suffer direct, indirect, and consequential damages, including, but not limited to:

proof at trial.

## ► COUNT XV ◄
## VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT, M.G.L. ch. 12, § 11I

90.   Plaintiff repeats and reavers the allegations contained in Paragraphs 1 through 435 above and

incorporates them herein by reference as though set forth in full.

91.   At all times relevant herein, the conduct of all Defendants was subject to the Massachusetts

Civil Rights Act.

92.   As set forth above, the Defendants interfered with, or attempted to interfere with by threats,

intimidation, or coercion, Plaintiff's exercise and enjoyment of her rights, pursuant to the

Constitutions of the United States and the Commonwealth of Massachusetts.

93.   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered direct,

indirect, and consequential damages, including, but not limited to: proof at trial that Plaintiff

has been deprived; and all damage and harm done to her.

Erickson v. Benedetti, et al
Civil No. 11-        (___)
Page 60

## ► COUNT XVI ◄
### RETALIATION

**94.**   Plaintiff repeats and reavers the allegations contained in Paragraphs above and incorporates them herein by reference as though set forth in full.

**95.**   At all times relevant herein, the conduct of all Defendants was subject to the laws of under the ADA.

**96.**   As set forth above, the Defendants interfered with, or attempted to interfere with by threats, intimidation, or coercion, Plaintiff's exercise and enjoyment of her rights, pursuant to the Constitutions of the United States and the Commonwealth of Massachusetts.

**97.**   As a direct and proximate result of the Defendants' conduct, Plaintiff has suffered direct, indirect, and consequential damages, including, but not limited to:  proof at trial that Plaintiff has been deprived; and all damage and harm done to her.

**98.**   Additional ethical obligations are also found in the CPCS's own Performance Standards, to which all indigent counsel are contractually bound.  For example, Standard 1.1(a) states that "[c]ounsel shall diligently and zealously protect and advance the client's interests, rights and goals in the proceedings [and] . . . . ensure . . . that the client's interests are protected."  Id. Standard 1.1(c) requires that "[c]ounsel . . . make available sufficient time, resources, knowledge and experience to afford competent representation to the client."  Id.  Standard 1.4 requires counsel to avoid any potential or actual conflicts-of-interest: "Counsel must be alert to and avoid all potential and actual conflicts of interest that would impair the ability to represent a client . . . In such event, counsel shall request that the court appoint new counsel."  Id.

**99.**   In addition, Section 38 of Chapter 221 of the Massachusetts General Laws mandates all attorneys to take an "Oath of Office" prior to admission to the Bar.  Said oath not only requires

Erickson v. Benedetti, et al
Civil No. 11-          (___)
Page 61

Plaintiff to uphold the constitutions of the United States and the Commonwealth, but also that it "conduct itself in the office of an attorney within the courts according to the best of its knowledge and discretion, and with all good fidelity as well to the courts as its clients." Id. Pursuant to all of these obligations, the defendants and their employees were legally required to inform the court of the conflict-of-interest created by the Defendants and to seek withdrawal as a result thereof.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter the following relief:

A.  Declarations that the Defendants have violated Plaintiff's constitutional and civil rights, as set forth herein;

B.  A declaration that the Defendants are barred and estopped from interfering with the Plaintiff's housing, entering without warrant or authorization.

C.  A declaration that Defendant are barred and estopped from interfering with the Plaintiffs federal benefits and academics and health care and treatment;

D.  All injunctive relief as claimed herein;

E.  An award of all other damages against the Defendants, jointly and severally, in an amount from proof at trial equal to all of Plaintiff's other direct, indirect, consequential, and special damages; and

F.  An award of punitive damages; and

G.  Such other and further legal, equitable, and injunctive relief as this Court deems just and proper.

Erickson v. Benedetti, et al
Civil No. 11-       (___)
Page 62

## **JURY DEMAND**

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL MATTERS SO TRIABLE.


Respectfully Submitted,
**Heidi Kristine Erickson (Plaintiff),**
297 Young's Mill Road       PO Box 380445
Paris, KY 40361             Cambridge, MA 02238

617-319-4000 t,  617-507-0104 f

By Signature / Attest under
the pains + penalties of
Perjury the facts herein as
true.

November 14th 2011