```
             UNITED STATES DISTRICT COURT
              DISTRICT OF MASSACHUSETTS
```

HEIDI K. ERICKSON,              )
                                )
V.                              )     M.B.D. No. 11-91307-DPW
                                )
COMMONWEALTH OF MASSACHUSETTS,  )
ET AL.                          )

                    MEMORANDUM AND ORDER
                      November 16, 2011

WOODLOCK, D.J.

I.   INTRODUCTION

On August 16, 2004, I entered an order directing that if Heidi K. Erickson ("Erickson") undertakes to file any additional papers in this Court (other than in an action already pending in this Court or in order to perfect an appeal), she must file a written petition seeking leave to do so. *See* Order on Plaintiff's Motion for Clarification and Response to Show Cause Order, *Erickson v. Somers, et al.*, C.A. No 04-10629-DPW.

On November 14, 2011, Erickson filed a 57-page Complaint along with an Exhibit, a Memorandum of Points and Authorities (Docket No. 2),[1] an Attestation of Good Faith (Docket No. 3), a Motion for Leave to Proceed *in forma pauperis* (Docket No. 4) and an Emergency Motion for Orders and for Oral Hearing (Docket No.

---

[1] Erickson's memorandum focuses on the scope of the ADA, the lack of Eleventh Amendment sovereign immunity, the lack of judicial immunity, and the definition of a qualified person with a disability.

5).[2]  On November 14, 2011, Erickson filed an Amended Motion for Injunctive Relief (Docket No. 6).  On November 16, 2011, Erickson filed additional supplemental papers (Docket Nos. 9 and 10) and a Motion to Be Allowed to file Electronically (Docket No. 8).

The Complaint names a host of defendants, including (1) the Commonwealth of Massachusetts; (2) AOTC (Administrative Office of the Trial Court); (3) CPCS; (4) the Massachusetts Department of Public Safety; (5) MCI Framingham; (6) Taunton State Hospital; (7) the Town of Plymouth; (8) the Town of Bourne; (9)Anthony Benedetti; (10) William Leahy; (11) Robert Mulligan; (12) Ronald Corbett; (13) Roberta Guez; (14) Lynn Bissonnette; (15)Philip McCue; (16)Mark Stankiewicz; (17) Daniel Sullivan; (18) Nancy Bennett; (19) Carol Beck; (20) Nancy O'Leary; (21) Armand Potenza; (22) Donald Bronstein; (23) Timothy Norris; (24) Joseph McDonald; (25) Michael Botieri; (26) Charles Warnock; (27) Melissa Melia; (28) William McCusker; (29) James Keegan; (30) John Rogers; (31) Michael Burke; (32) Dennis Woodside; (33) William Fall; (34) Jessica Cristani; (35) Linda Bracket; (36) John Doe; and (37) Jane Doe.

The Complaint contains a myriad of grievances, not all of which are entirely intelligible because the pleading is replete with rambling and unorganized statements.  As a whole, it does

---

[2]This action was assigned to me as the Emergency Judge handling Miscellaneous Business Docket matters.

2

not substantially comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. From what can be gleaned, and without recounting each and every argument contained in the Complaint, the salient allegations are as follows.

Erickson alleges that she is now a domiciliary of Kentucky, and is attending school in Kentucky. She also claims she is a disabled person for purposes of the Americans With Disabilities Act ("ADA"). She asserts claims under Titles II and III of the ADA, as well as 42 U.S.C. § 1983, the Massachusetts Civil Rights Act, and other state law. She contends that all the defendants are government employees of the Commonwealth of Massachusetts or its agencies, or are private citizens employed by public defendants. At the outset, she argues that this Court has jurisdiction, "although it is improper that the District of Massachusetts hear this matter." Compl. at 2. She references a contemporaneously-filed "Motion for Change of Venue" *see id.* at n.4, but none has been filed. She asserts that this case should be transferred to the United States District Court for the Eastern District of Kentucky. *Id.* at 15, ¶ 10.

First, Erickson alleges that her appointed attorneys from the Committee for Public Counsel Services ("CPCS") refused to provide her adequate legal representation in her criminal case, and continues to refuse adequate representation in connection with her appeal. She alleges that CPCS threatens any assigned

attorney by refusing to provide reimbursement for legal representation. As a result, she has been denied due process and fairness in the state court, and asserts liability on CPCS's chief administrator, chief counsel, and deputy chief counsel. Erickson also argues she has no state appellate attorney,[3] although she filed a Notice of Appeal of her conviction in state court in January 2011. She argues that CPCS refuses to communicate with her or to advance her criminal appeal, thereby creating a "hostile, unequal, discriminatory, retaliatory and deprivatory treatment and environment." *Id.* at ¶ 12.

Next, Erickson complains that she was unable to have scheduled necessary medical treatment since the date of her wrongful conviction.[4] She alleges generally and collectively, that the defendants knowingly and maliciously conspired to cause her conviction and to deprive her of her property, and discriminated against her because of her disability. She also alleges defendants have retaliated against her because she has

---

[3]Further into the Complaint, Erickson references an appellate attorney named Caddick. She also states in her Emergency Motion that four assigned counsel moved to withdraw in her criminal case, leaving her without an appellate counsel at this time.

[4]It appears that the problem with medical care is that, because Erickson is domiciled in Kentucky, she cannot seek medical attention in Massachusetts unless she agrees to accept Mass. Health, but she is ineligible because she is not a Massachusetts resident. She is eligible for Kentucky Medicaid and is already a Medicare recipient.

reported these actions to agencies.

Erickson next references her 2008 case before Judge Zobel, in which she claimed discrimination on account of her disability because the state court would not permit her service dog in its buildings. She asserts Judge Zobel inappropriately dismissed the case, and that she should have recused herself. She also alleges that Judge Saris dismissed another case filed against Harvard University because she was negligent in her duties as an officer of the Court, and because she was biased. *Id.* at ¶ 9. Erickson asserts that she continues to be mistreated by this Court, referencing her 2010 lawsuit that was dismissed *sua sponte* because of possible abstention issues. She also asserts that Judge Young acted without reasonable judicial insight because he dismissed her 2009 case regarding her service dog. She asserts the dismissal was prejudiced and discriminatory based on her disability and not because of a imperfections in her Complaint or for lack of jurisdiction. *Id.* at 15.

Next, Erickson claims that because her constitutional rights were violated, she has been restricted in her access to medical treatment, federal benefits, and legal assistance (in her state criminal case). She then recounts specific deficiencies occurring in connection with her criminal case. She claims that on November 10, 2011, she requested a hearing on her motion for permission to travel, filed in the Plymouth District Court. That

motion was denied without explanation. She contends that this denial was unfair because she is a domiciliary of Kentucky and she is a full time student there. She does not wish to remain in Massachusetts, but wishes to return to Kentucky and resume her studies.

Further, Erickson claims she was wrongly incarcerated for a crime she did not commit, denied a fair trial, and "tortured" while incarcerated. *Id.* at 8. She asserts that the Massachusetts Probation Department has harassed her, deprived her of her constitutional rights, fabricated claims and discriminated against her due to her disability, and has negligently administered her case.

In addition to claims against CPCS, the Courts, and the Probation Department, Erickson claims she was harassed by the Plymouth Police Department before and after December, 2008. The claims arise out of an alleged fabricated story by the police in order to enter and search her apartment. She claims there was a conspiracy to evict her, and to have false animal cruelty criminal charges filed against her.[5] Erickson then recounts her various defenses to the criminal charges.[6]

---

[5] Erickson then makes claims disputing the allegations concerning the condition of her apartment. She also claims that CPCS failed to interview an expert veterinarian concerning this matter, because CPCS lacked funds for defense preparation.

[6] Erickson also claims that in December, 2010, the Plymouth police broke into her vehicle without a warrant.

Erickson also alleges that she was transported, unsafely, to Taunton State Hospital for an evaluation, and while there, she was abused by numerous staff. Thereafter, she was transported to MCI Framingham, where, again, she suffered multiple deprivations and abuses.

Next, Erickson alleges that the Commonwealth and its agencies have interfered with her academic education by prohibiting contact with animals (including service animals), even those not under her care and used solely in her studies.[7] She claims the lack of service animals prevents her from completing her degree. She alleges these sentencing conditions, and others imposed on January 11, 2011, were not related to findings at trial and were "torturous."

In addition to the above claims, Erickson claims the Massachusetts Probation Department wrongfully violated her probation because she failed to complete anger management and community service as directed.[8] She disputes this and claims this was an abuse of process and constituted retaliation against her. She asserts the probation revocation hearing was unfair, and that new conditions of probation --including the directive to

---

[7]She also claims that her student loans will mature if she is not in school for more than six months.

[8]She also contends that her probation office is encouraging her Kentucky landlord to evict her and remove her horses, despite the fact that Erickson pays her rent, and has been arranging for a bloodstock agent to evaluate and transfer her horses.

7

stay away from animals -- infringed on her constitutional rights, were unfair and ambiguous, and should have been heard by the sentencing judge and not a different judge.

Finally, Erickson contends that her inability to return to Kentucky has negatively impacted her section 8 and medicaid benefits.

As relief, Erickson seeks declaratory and injunctive relief. Among other things, she seeks a declaration that the Plymouth defendants' search and seizure of her home on various dates, were unconstitutional and discriminatory. She also seeks a declaration that CPCS caused a due process deprivation by limiting their employees actions, controlling their time, or by refusing to reimburse for expenses for her criminal defense. Further, she seeks a declaration that the probation defendants have engaged in numerous unconstitutional practices depriving her of due process and intentionally detaining her in Massachusetts. She also seeks to enjoin the defendants and to compel them to pay her fair compensation for her property if it is destroyed. Additionally, she seeks to permanently enjoin the defendants from practices that interfere with her education, her home, her family visits, her housing, and her animal therapy. Erickson also seeks a declaration that the defendants be barred and estopped from interfering with her federal benefits and her health care treatment.

In her Emergency Motion for Order and Oral Hearing (Docket No. 5), Erickson argues that abstention issues are not applicable here because there are continuous constitutional deprivations that constitute extraordinary circumstances. She argues that exhaustion of administrative remedies is not required under the ADA and that Eleventh Amendment sovereign immunity does not apply. Further, Erickson argues that because this Court has, for frivolous reasons, denied her relief in the past, this warrants a change of venue. Next, she claims there is a good likelihood that she will die because of the defendants' interference with her right to medical treatment, federal benefits, education, and property. She claims she is under threat of incarceration for probation violations merely because of her filing of motions regarding her property interests. She again contends that she received an unfair state criminal trial, and was unfairly sentenced.

Next, she claims that on June 1, 2011, the Kentucky housing authority sent her a notice of intention to terminate her housing assistance in Paris, Kentucky. She has appealed this administrative action. Several administrative hearings were scheduled, but Erickson was unable to attend on the scheduled date. There is a hearing set for November 17, 2011, and Erickson plans to travel to return home to Kentucky and attend the hearing; however, the state probation department refuses to grant

her permission to travel. She contends this is not a judicial restriction (which expired on June 1, 2011), but the condition continues to be imposed by the probation department, without explanation. Erickson claims that should she be in violation of probation, she risks losing her section 8 benefits.

Additionally, Erickson alleges she is under threat of probation violation because she sold her horses to a friend, but the state judge refused to accept the validity of the sale, insisting that Erickson must relinquish her animal property immediately to a non-profit organization. She claims if she is incarcerated, there is no facility that can provide her with adequate "non-tortuous" conditions.

As relief, Erickson seeks an Order restraining the Commonwealth from discriminating against her due to her disability and her requests for appointment of counsel who is non-discriminating. She also seeks an Order restraining the Commonwealth and its agents from interfering with or preventing her travel home to Kentucky, receiving medical treatment in Kentucky, attending school, visiting her parents, and interfering with her property (including an Order permitting contact with animals as it relates to her studies). She seeks an Order allowing her to travel to Kentucky, attend school, and to visit her parents and doctors.

II. DISCUSSION

A.  The Motion for Leave to Proceed *In Forma Pauperis*

A review of Erickson's financial disclosures indicates she has insufficient funds to pay the filing fee either for this miscellaneous business docket action.  Accordingly, Erickson's Motion for Leave to Proceed *in forma pauperis* (Docket No. 4) is ALLOWED.[9]

B.  The Motion for Institute Lawsuit

Erickson has not filed a formal Motion to Institute a Lawsuit, but has filed an Attestation of Good Faith.  I will construe this pleading as a Motion to Institute Lawsuit.  Nevertheless, I will not permit Erickson to proceed with the filing of a new civil action.

First, I find that this action, alleging vast conspiracies, discrimination, and retaliation against a multitude of state defendants, is wholly frivolous and no plausible claim upon which relief may be granted reasonably can be discerned.  It would be a Herculean task to require each defendant to peruse the Complaint in order to respond to the allegations, which are broad-sweeping and conclusory in nature.

Further, it is clear to me that Erickson's claims are either

---

[9] I note, however, that she has represented that she sold her horses to a friend, but has not disclosed any funds received from that sale.  In any event, given her substantial medical and dental debt, her representation that she receives a section 8 housing subsidy, and her other financial disclosures, I will permit her *in forma pauperis* status.

11

reiterations of complaints previously dismissed, or present challenges to ongoing state criminal proceedings or rulings made in connection with her state criminal case, including challenges to the conditions of her release on probation, and adverse decisions made concerning those conditions. As such, abstention is appropriate notwithstanding Erickson's assertion otherwise. Although Erickson may not currently have an attorney to pursue her appeal, this remains a matter for the state courts to resolve. Further, Erickson may not resort to this court to by-pass the state process entirely, simply because she disagrees with the decision to deny her permission to travel to Kentucky, or because the consequences of that decision are adverse.

Second, most of Erickson's allegations involve due process violations in connection with her conviction and sentence. She may not raise civil rights violations unless or until she has vacated her conviction on direct appeal or by a collateral attack (habeas petition). *See Heck v. Humphrey*, 512 U.S. 477 (1994). Under the Favorable Termination Rule:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87 (footnote omitted). Without such a

showing of a favorable termination, a person's cause of action [for civil rights violations] has not yet accrued. *Id.* at 489. The Favorable Termination Rule has been extended to a wide variety of prisoner challenges to state disciplinary and parole procedures for damages where success "would, if established, necessarily imply the invalidity of the deprivation...." *Edwards v. Balisok*, 520 U.S. 641, 646 (1997). *See Wallace v. Kato*, 549 U.S. 384 (2007)(refining application of Heck involving pretrial detainees). Thus, under *Heck* and its progeny, a claim that would necessarily imply the invalidity of the states' deprivation, punishment or duration of confinement may not be brought unless and until the condition is reversed. Here, Erickson clearly is seeking orders that would necessarily imply the validity of her state criminal conviction. *See Jackson v. Parker*, 2009 WL 3464138, *3 (N.D. Ill. 2009)("The state court judge's finding of guilt and imposition of supervision constitutes a conviction and sentence for the purposes of *Heck's* favorable termination rule.").

Third and perhaps most significantly, I find that this action is abusive and vexatious, and lacks a good faith basis because Erickson has filed this case with a contemporaneous request for a change of venue to the <u>Eastern</u> District of Kentucky. Rather than file a Complaint directly in that district, Erickson has filed the pleadings in this Court, despite

13

alleging that this Court is the improper venue because of the bias against her.  At the same time, she seeks transfer to another District presumably in the hopes that the other District would not then transfer this action back to the District of Massachusetts.  Based on her past litigation experience, Erickson is presumed to have knowledge that the proper venue is the District of Massachusetts, but also knows that if she filed in the District Court in Kentucky, the action would likely be transferred to this District.  This is because Erickson previously had filed a Complaint, in the <u>Western</u> District of Kentucky, against many of the same defendants in this action.  That action was transferred to this Court, and then dismissed by Judge Young because Erickson was enjoined from filing suit in this Court absent prior permission to file.  *See Erickson v. Commonwealth of Massachusetts, et al.*, Civil Action No. 1-10907-WGY.

In any event, the short of it is that I do not find any good basis to permit Erickson to circumvent the Order enjoining her by permitting her to file the instant Complaint.

Accordingly, to the extent that Erickson's Attestation of Good Faith (Docket No. 3) is construed as a Motion for Leave to Institute a Lawsuit, it is <u>DENIED</u>.

    C.    <u>The Emergency Motion for Orders and Oral Hearing</u>

In light of the above, I find no good cause to grant any of

14

the emergency relief requested by Erickson. While I do not discredit her allegations of harm, I simply cannot find that she has shown a likelihood of success on the merits, or that any injury to Erickson outweighs the harm to the defendants if granted, or that the grant of relief would not adversely affect the public interest. *See Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981)(outlining factors for preliminary injunctive relief); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop*, 839 F. Supp. 68, 70 (D. Me. 1993) (extending four part preliminary injunction test to temporary restraining orders). I also do not find that oral argument in this matter is necessary. Finally, to the extent that Erickson seeks a change of venue to any other federal district court, the request is DENIED as unfounded.

Accordingly, Erickson's Emergency Motion for Orders and Oral Hearing (Docket No. 5) is DENIED.

III. CONCLUSION AND ORDER

Based on the foregoing, it is hereby Ordered that:

1. Erickson's Motion for Leave to Institute Lawsuit (Docket No. 3) is DENIED;

2. Erickson's Motion for Leave to Proceed *in forma pauperis* (Docket No. 4) is ALLOWED;

3. Erickson's Emergency Motion for Orders and Oral Hearing (Docket No. 5), including her request for a change of venue, is DENIED;

4. Erickson's Motion for Injunctive Relief (Docket No. 6) is DENIED; and

5. Erickson's Motion for an Order Allowing Plaintiff to File Electronically (Docket No. 8) is <u>DENIED</u>.

SO ORDERED.

<u>/s/ Douglas P. Woodlock</u>
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE